1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10                          EASTERN DIVISION

11 VERONICA DORAME,                )
                                    )
12             Plaintiff,           )    Case No. EDCV 05-0177 AJW
                                    )
13       v.                         )    MEMORANDUM OF DECISION
                                    )
14 JO ANNE B. BARNHART,             )
   Commissioner of the Social       )
15 Security Administration,         )
                                    )
16             Defendant.           )
   _____  )
17

18       Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner
19 of the Social Security Administration (the "Commissioner"), denying plaintiff's application for
20 disability insurance benefits and supplemental security income ("SSI") benefits. The parties
21 have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed
22 issue.

23                        **Administrative Proceedings**

24       Plaintiff filed her applications for disability insurance and SSI benefits on October 1,
25 2002, and December 17, 2002, respectively, alleging that she became disabled on November
26 2, 2001 due to allergic atopic dermatitis and depression. [JS 2; Administrative Record ("AR")
27 73, 77]. In a written hearing decision dated November 15, 2004, Administrative Law Judge
28 Jay E. Levine (the "ALJ") found that plaintiff's alleged impairments were severe and resulted in

nonexertional limitations to "low stress jobs which do not require her to respond to repeated requests for information from the public or co-workers but do no preclude all contact with either group.  She must avoid concentrated exposure to hear or cold and is precluded from ... food handling or processing." [AR 18].  The ALJ concluded that plaintiff was not disabled because her RFC did not preclude her from performing work available in significant numbers in the national economy. [JS 2; AR 21].  The Appeals Council denied plaintiff's request for review of that decision. [JS 2; AR 5-7].

## Issues

The disputed issues are whether the ALJ (1) properly considered the opinion of the examining physician; (2) posed a complete hypothetical question to the ALJ; and (3) properly rejected competent evidence from plaintiff's sister. [JS 2-3].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954.  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954.  The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Examining physician's opinion**

1    Plaintiff contends that the ALJ failed to consider "important functional limitations"
2 described by Dr. Philip G. Barnard. A licensed clinical psychologist, Dr. Barnard evaluated
3 plaintiff in January 2003 at the request of the State of Washington's Department of Vocational
4 Rehabilitation in connection with plaintiff's request for retraining to have a home-based
5 business. [JS 304; see AR 219-223]. Plaintiff also contends that the ALJ summarized Dr.
6 Barnard's findings without indicating whether he accepted or rejected them. [JS 4].

7    The ALJ summarized Dr. Barnard's report in some detail. [AR 17]. The ALJ noted that
8 Dr. Barnard diagnosed post-traumatic stress disorder ("PTSD"); chronic depressive disorder, not
9 otherwise specified, attention deficit hyperactivity disorder ("ADHD"); and a somatoform
10 disorder, not otherwise specified. [AR 17, 223]. Dr. Barnard administered a battery of
11 psychological tests, and he opined that plaintiff's social avoidance, "moderately serious"
12 depression, anxiety, and problems with attention and concentration would "impede vocational
13 training to a significant extent." [AR 223]. Her prognosis for retraining was "guarded because
14 of the limitations involved." [AR 223]. Dr. Barnard concluded that plaintiff should be
15 evaluated by a psychiatrist for psychotropic medication, and that plaintiff needed to continue
16 with individual counseling at least once a week. [AR 17, 223].

17    Contrary to plaintiff's argument, the ALJ did not merely summarize Dr. Barnard's
18 findings without indicating whether he disagreed or disagreed with Dr. Barnard's opinion. The
19 ALJ said that he found Dr. Barnard's "pessimistic prediction" about plaintiff's employability
20 unpersuasive because the objective findings did not support such a negative assessment, and
21 because Dr. Barnard's vocational conclusions were inconsistent with other evidence in the
22 record. [AR 19]. For example, the ALJ noted that Dr. Barnard administered psychological tests
23 showing that plaintiff functioned in the upper end of low average range of intelligence, with
24 reading and writing at the high school level and math at a seventh-grade level. [AR 17]. Plaintiff
25 sought out vocational rehabilitation, and she told Dr. Barnard that she wanted to work as a "law
26 advocate," an occupation in which she had been certified. She described her prior work as a
27 medical receptionist "boring." [AR 17]. On examination, plaintiff exhibited no evidence of
28 organic brain impairment, but she displayed some clinical depression, social avoidance, and

1  preoccupation with physical well-being. [AR 17].

2  The ALJ noted that plaintiff had undergone only limited mental health treatment, and
3  her last such treatment was almost two years before the date of his decision. [AR 19]. One of
4  plaintiff's treating therapists opined that plaintiff was not mentally impaired, and that her
5  problems revolved around her skin condition and life stressors. [AR 18, 226]. Another treating
6  therapist performed an initial mental status examination that was within normal limits except
7  for slight impairments in insight, memory, and judgment. The initial diagnosis was recurrent
8  moderate depression and PTSD. [AR 17, 198-199]. In a subsequent progress note, the same
9  therapist noted that plaintiff seemed mostly concerned with her skin problems and "seemed to
10 exaggerate at times and even claimed to have 106.7 temperature." [AR 207]. Although neither
11 treating therapist was an "acceptable medical source" whose opinion is entitled to controlling
12 weight, the ALJ was entitled to weigh their treatment observations against an examining source
13 opinion. See 20 C.F.R. §§ 404.1513(a)&(d), 416.913(a)&(d)(distinguishing acceptable medical
14 sources from "other sources," and stating that information from other sources may be used "to
15 show the severity of your impairment(s) and how it affects your ability to work"); Gomez v.
16 Chater, 74 F.3d 967, 970-971 (9th Cir.) (explaining that the Commissioner's regulations
17 contain "no specific guidelines for the weighing of opinions from other sources," and therefore
18 "[t]his permits the Commissioner to accord opinions from other sources less weight than
19 opinions from acceptable medical sources"), cert. denied, 519 U.S. 881 (1996).

20 The ALJ also permissibly relied on the opinions of two non-examining state agency
21 medical consultants who considered, and gave weight to, Dr. Barnard's conclusions. Both
22 medical consultants were psychologists like Dr. Barnard, and both concluded that the mental
23 impairments Dr. Barnard described were functionally limiting, but not disabling. [AR 17, 250-
24 267, 287-300]. The first state agency consultant, Dr. Bailey, noted that Dr. Barnard diagnosed
25 plaintiff with PTSD, ADHD, depression NOS, and somatoform disorder NOS. Dr. Bailey
26 adopted all of Dr. Barnard's diagnoses, but he also noted that Dr. Barnard indicated that
27 plaintiff still could perform the activities of daily living independently, could tolerate limited
28 contact with the public, could concentrate for some multi-step tasks, and experienced no

episodes of decompensation in the workplace. [AR 263]. Dr. Bailey incorporated those functional limitations into his RFC assessment, but he did not find them disabling (and indeed, Dr. Barnard never said they were). [See AR 250-267]. The second state agency consultant, Dr. Beaty, fully adopted Dr. Bailey's findings and rationale, and in so doing he endorsed Dr. Bailey's interpretation of Dr. Barnard's opinion. [AR 266].

The ALJ relied on both of the state agency medical consultants' opinions to formulate his RFC finding. [AR 266]. Because the state agency medical consultants' opinions took Dr. Barnard's opinion into account and were not inconsistent with it, their opinions constitute substantial evidence supporting the ALJ's RFC assessment. See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001)(explaining that the opinion of a non-examining medical expert may constitute substantial evidence when it is consistent with other independent evidence in the record).

Plaintiff's argument that the ALJ overlooked "important functional limitations" in Dr. Barnard's report is unpersuasive. When Dr. Barnard said that plaintiff was not "fixed and stable," he was not describing a mental impairment or a functional limitation; instead, he was using a term of art used to denote a condition that is permanent under the Washington state workers' compensation system. See, e.g., Williams v. Virginia Mason Medical Center, 880 P.2d 539, 541-543 (Wash. App. 1994) (discussing the meaning of those terms). Plaintiff argues that Dr. Barnard also said that plaintiff should have counseling once a week and exhibited "social withdrawal" in addition to "social avoidance." [JS 4]. Dr. Barnard, however, never said that those problems made plaintiff unable to work. Moreover, the ALJ factored plaintiff's "social withdrawal" and "social avoidance" into his RFC finding when he limited plaintiff to low-stress jobs that involve limited contact with the public and co-workers. [AR 18]. As for Dr. Barnard's recommendation that plaintiff receive counseling once a week, he was not treating plaintiff and there is no indication his recommendation was implemented. Even if it had been, plaintiff has not shown that maintaining a counseling appointment once a week would preclude her from working. Accordingly, the ALJ did not commit legal error in weighing Dr. Barnard's opinion, and the ALJ's RFC finding is supported by substantial evidence in the record.

**Hypothetical question**

Plaintiff contends that the ALJ erred by omitting from his hypothetical questions to the vocational expert the limitations from Dr. Barnard's report discussed above. Specifically, plaintiff contends that the ALJ should have included the limitations that plaintiff "is currently not stable at this time, has social withdrawal, and needs increased counseling from every other week to once a week." [JS 7].

The ALJ's job at the fifth step in the sequential evaluation procedure is to pose hypothetical questions that set out all of the claimant's impairments for the consideration of the vocational expert, who then "translates these factual scenarios into realistic job market probabilities ...." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). Hypothetical questions posed to the vocational expert must accurately describe all of the limitations and restrictions of claimant that are supported by the record. Tackett, 180 F.3d at 1101; Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993). A vocational expert's response to a hypothetical question constitutes substantial evidence only if it is supported by the medical evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

For the reasons discussed above, the ALJ did not err in weighing Dr. Barnard's opinion, and therefore the ALJ did not err in omitting from his RFC finding the specific limitations of not being "fixed and stable," social withdrawal, and a need for weekly counseling. Because the omission of those limitations from the ALJ's RFC finding was not error, the ALJ was not required to include those limitations from his hypothetical questions to the vocational expert. The vocational expert testified that a hypothetical person with the limitations identified by the ALJ in his RFC finding could perform jobs available in significant numbers in the national economy [AR 44-46], and that testimony is substantial evidence supporting the ALJ's finding that plaintiff can perform alternative work.

**Daily activities questionnaire**

Plaintiff contends that the ALJ's RFC assessment is flawed because the ALJ gave insufficient reasons for rejecting the unsworn written responses of plaintiff's sister, Laura Vargas, in a Daily Activities Questionnaire. [AR 112-116]. In that questionnaire, Ms. Vargas

said that plaintiff's skin condition had affected her appearance, self-confidence, and grooming habits and had circumscribed her daily activities and social interactions. Ms. Vargas said that she helped her sister with cleaning and shopping, but that her sister cared for her two young children, prepared easy meals, watched television or listened to the radio, and paid her bills. The ALJ considered that report and concluded that it was consistent with plaintiff's self-reported limitations and "added little to the record." [AR 18].

Plaintiff has not challenged the ALJ's assessment of the credibility of her subjective testimony regarding her symptoms and limitations. The ALJ found plaintiff's subjective complaints credible to the extent reflected in his RFC finding, but he was not convinced that her subjective symptoms were disabling. [AR 21]. Ms. Vargas's questionnaire responses were cumulative of her sister's testimony, and the ALJ permissibly concluded that Ms. Vargas's statements were consistent with the limitations he imposed based on his consideration of the objective medical evidence and plaintiff's own testimony. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (stating that an "[a]n ALJ need only give germane reasons for discrediting the testimony of lay witnesses," and holding that the ALJ permissibly accepted the testimony of the claimant's family and friends that was consistent with the record of her activities and the objective evidence in the record).

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**


DATED: February 22, 2006


                                                       /s/
                                    ANDREW J. WISTRICH
                                    United States Magistrate Judge